IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 14-cv-01855-LTB

LOYD W. NEAL,

       Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

       Defendant.
_____

**ORDER**
_____

Plaintiff Loyd W. Neal appeals the final decision of the Commissioner of Social Security ("SSA") denying him disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. I have considered the briefs [Docs. # 13, 17, 20] and the administrative record [Doc. # 7] ("AR"). Oral argument would not materially assist me in determining this appeal.

Mr. Neal contends that SSA erred with respect to its assessment of several pieces of evidence in determining his residual functional capacity at step four of the agency's sequential process for evaluating disability: (1) evidence from his psychiatrist that he submitted to SSA's Appeals Council; (2) evidence from the Department of Veterans Affairs ("VA"); and (3) his own statements about his conditions. As I explain in more detail below, I agree in certain respects. Accordingly, I **REVERSE** SSA's decision and **REMAND** this case to the agency for further proceedings.

## I. Background

Mr. Neal is a 35-year-old Army veteran who resides in Colorado Springs, Colorado. AR 230, 232. He filed his claim with SSA on November 30, 2012, alleging disability beginning January 14, 2012. AR 27. SSA denied his claim initially on June 25, 2013. *Id.* Mr. Neal requested a hearing. *Id.* The hearing took place on November 13, 2013, before an administrative law judge ("ALJ"). *Id.* On December 5, 2013, the ALJ denied Mr. Neal's claim, concluding that he was not disabled within the meaning of the Social Security Act. AR 38. On January 13, 2014, Mr. Neal requested that SSA's Appeals Council review the ALJ's decision. AR 20-21. On April 30, 2014, the Appeals Council denied review, making the ALJ's decision the final decision of SSA. AR 1; *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On July 3, 2014, Mr. Neal timely filed the instant appeal. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. Legal Standards

### A. SSA's Five-Step Process for Determining Whether a Claimant Is "Disabled"

A claimant is "disabled" under Title II of the Social Security Act if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). SSA has established the following five-step sequential evaluation process for determining whether a claimant is disabled and thus entitled to benefits. 20 C.F.R. § 404.1520.

At step one, SSA asks whether the claimant is presently engaged in "substantial gainful activity." If he is, benefits are denied and the inquiry stops. *Id.* § 404.1520(b). At step two, SSA asks whether the claimant has a "severe impairment"—that is, an impairment or combination of impairments that "significantly limits [his] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If he does not, benefits are denied and the inquiry stops. If he does, SSA moves on to step three, where it determines whether the claimant's impairment(s) "meet or equal" one of the "listed impairments"—impairments so severe that SSA has determined that a claimant who has them is conclusively disabled without regard to the claimant's age, education, or work experience. *Id.* § 404.1520(d). If not, SSA goes to step four.

At step four, SSA determines the claimant's residual functional capacity ("RFC"), *i.e.,* what he is still able to do despite his impairments, and asks whether the claimant can do any of his "past relevant work" given that RFC. *Id.* § 404.1520(e). If not, SSA goes to the fifth and final step, where it has the burden of showing that the claimant's RFC allows him to do other work in the national economy in view of his age, education, and work experience. *Id.* § 404.1520(g). At this step, SSA's "grid rules" may mandate a finding of disabled or not disabled without further analysis based on the claimant's age, education, and work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2. In contrast with step five, the claimant has "the burden of establishing a prima facie case of disability at steps one through four." *Doyal*, 331 F.3d at 760.

**B. Standard for Reviewing SSA's Decision**

My review is limited to determining whether SSA applied the correct legal standards and whether its decision is supported by substantial evidence in the record. *Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001);

*Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).  With regard to the law, reversal may be appropriate when SSA either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards.  *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).  With regard to the evidence, I must "determine whether the findings of fact . . . are based upon substantial evidence, and inferences reasonably drawn therefrom.  If they are so supported, they are conclusive upon [this] court and may not be disturbed."  *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).  "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  I may not re-weigh the evidence or substitute my judgment for that of the ALJ.  *See Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991); *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987); *Cagle v. Califano*, 638 F.2d 219, 220 (10th Cir. 1981).

### III. The ALJ's Decision

The ALJ followed the five-step analysis outlined above.  At step one, the ALJ found that Mr. Neal had not engaged in substantial gainful activity since the alleged onset date of his conditions, January 14, 2012.  AR 29.  At step two, the ALJ found that Mr. Neal's degenerative joint disease of the left upper extremity, migraine headaches, and posttraumatic stress disorder ("PTSD") were severe impairments.  AR 29-30.  At step three, the ALJ concluded that Mr. Neal

did not meet or equal a listed impairment. AR 30-31. At step four, the ALJ assessed Mr. Neal's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except that the claimant can occasionally lift and/or carry up to 20 pounds; frequently lift and/or carry [up] to 10 pounds; can stand and/or walk for 6 out of 8 hours; sit for at least 6 out of 8 hours; is able to occasionally climb ladders and frequently climb stairs; has no limitations on the ability to balance or stoop, and can frequently kneel, crouch, and crawl; can occasionally reach overhead with the dominant left upper extremity, but has no other manipulative limitations; is able to understand, remember, and carry out moderately complex instructions that can be learned and mastered within 6 months; can sustain concentration, persistence, and pace for these instructions over an 8 hour work day and 40 hour workweek; should only have occasional and superficial interactions with the general public, but can otherwise interact appropriately with others; can plan and set goals; travel; tolerate supervision; and recognize and avoid work hazards.

AR 31-36. The ALJ determined that Mr. Neal could not perform any of his past relevant work. AR 36-37. At step five, however, the ALJ concluded that Mr. Neal could perform jobs that exist in significant numbers in the national economy, including the representative jobs of electronics tester, duplicating machine operator, and electronics worker. AR 37-38. Based on this conclusion, the ALJ determined that Mr. Neal was not disabled. AR 38.

## IV. Analysis

### A. Remand Is Necessary for the ALJ to Address Dr. Jennings' November 2013 Records

In determining the mental aspects of Mr. Neal's RFC, set forth above, the ALJ relied on progress notes from office visits that Mr. Neal had with his psychiatrist, Clark Jennings, M.D., in 2012, a report from consultative examiner Terry Jones, M.D., and records from the Department of Veterans Affairs. Following the hearing with the ALJ, Mr. Neal submitted two additional

pieces of evidence to the Appeals Council: progress notes from a November 5, 2013 office visit with Dr. Jennings and a Mental Impairment Questionnaire completed by Dr. Jennings, dated November 21, 2013. AR 622-28. The Appeals Council made these documents "part of the record, although it "denied [Mr. Neal's] request for review," stating that it "found no reason under our rules to review the Administrative Law Judge's decision." AR 1, 5.

SSA's regulations provide that the Appeals Council must consider "new and material evidence" that "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b). The claimant may present such evidence to the Appeals Council without any showing of good cause or the like. *See O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). The Appeals Council must "review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of" the "entire record including the new and material evidence." 20 C.F.R. § 404.970(b). Where the Appeals Council makes the new evidence part of the administrative record, as here, it is presumed that the claimant has "submitted qualifying new evidence for consideration" and, therefore, the "Appeals Council was required to consider [such evidence] as part of its evaluation of the entire record to determine whether to review the case." *Martinez v. Barnhart*, 444 F.3d 1201, 1207 (10th Cir. 2006) (internal quotations and citation omitted). If the Appeals Council denies review, "the new evidence becomes part of the administrative record to be considered [by the court] when evaluating the Secretary's decision for substantial evidence." *O'Dell*, 44 F.3d at 859. I therefore consider whether the ALJ's mental RFC determinations are supported by substantial evidence in light of the November 2013 records from Dr. Jennings as well as the other evidence in the record.

I begin by summarizing the evidence on which the ALJ based those determinations, beginning with progress notes from Mr. Neal's 2012 office visits with Dr. Jennings. Dr. Jennings repeatedly diagnosed Mr. Neal with PTSD and bipolar I disorder. AR 580-85. He prescribed various medications, including the anticonvulsant Depakote, the antidepressant Prozac, the anticonvulsant and analgesic neurontin, the sedative and insomnia drug Ambien, the antipsychotic Abilify, the antianxiety medication Xanax, and the antidepressant trazadone. AR 583-85. He conducted mental status examinations at these visits. At a February 2012 visit, he noted a moderately unkempt appearance and moderately labile thoughts; assessed a chronic mild to moderate thought disorder with paranoid and religious trends; and remarked that it is "increasingly obvious this individual suffers from rather severe chronic mental illness." AR 585. At a June 2012 visit, he noted mildly disorganized behavior, mildly idiosyncratic thought processes, moderate distractibility, oriented cognition, and competent memory. AR 584. At an August 2012 visit, he noted that Mr. Neal was much better groomed, had pleasant behavior, and had "much improved" organization of his thought processes. AR 583.

In February 2011, Dr. Jones, the consultative examiner, noted that Mr. Neal had appropriate hygiene, dress, grooming, speech, and thought processes, and was cooperative and congenial. AR 317. On mental status examination, Mr. Neal was able to recall three of three items on immediate recall but only one of three on delayed recall. AR 318. Dr. Jones assessed PTSD and adjustment disorder with mixed emotional features, and noted that Mr. Neal's symptoms included "avoidance of crowded areas, increased irritability and increased ease of anger." AR 319. He assessed a Global Assessment of Functioning ("GAF") score of 55 to 60, indicating moderate symptoms or any moderate difficulty in social, occupational, or school

functioning. *See* Amer. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders at 34 (4th ed. 1994) ("DSM-IV").

Documents received from the VA show that Mr. Neal and his wife were participating in the Comprehensive Caregiver Support Program through at least November 2012. AR 433-40, 486-90. Under the program, the VA found that Mr. Neal needed assistance with activities of daily living—including preparing meals, shopping, housework, transportation, managing medications, and managing finances—and provided a stipend to Mr. Neal's wife for helping him with those activities. AR 490. The VA noted that Mr. Neal did not drive a car because he "becomes disoriented [and] has flash backs." AR 491.

In January 2013, Mr. Neal underwent a compensation and pension examination with the VA. Examiner Melissa Polo-Henston, Psy.D., concluded that Mr. Neal was able to work but "requires a supportive environment where his mental health issues are understood," including "support to help him with some stressors in being in crowded situations." AR 394. She noted that his PTSD symptoms were still present but had been stabilized with medication and therapy. *Id.*

In explaining her mental RFC determination, the ALJ noted that, "[o]verall, [Mr. Neal's] psychiatric and psychological treatment history and mental status exam findings demonstrate that [he] has significant anxiety that most greatly affects his ability to . . . interact with the general public." AR 34. Because he "is not entirely unable to leave home alone, and attends appointments by himself," however, the ALJ concluded that "he should be capable of at least occasional, superficial interaction with the public." *Id.* Further, his "generally congenial demeanor suggests that he should be able to interact with co-workers and supervisors with little

difficulty." *Id.* The ALJ acknowledged that Mr. Neal's anxiety would also "have some effect on his ability to sustain concentration, particularly when working around others," but concluded that "he is capable of understanding, remembering and carrying out instructions that can be learned and mastered within 6 months." *Id.*

I turn now to the evidence submitted to the Appeals Council. The November 5, 2013 progress note shows that Dr. Jennings instructed Mr. Neal on tapering off Prozac and neurontin, which Mr. Neal felt he no longer needed because he was "doing better." AR 622. Dr. Jennings observed that Mr. Neal was much better groomed and that he had pleasant behavior, an affect characterized by minimal anxious dysphoria, minimal thought disorganization, no overt delusions or hallucinations, mild distractibility, oriented cognition, and competent memory. *Id.* He repeated his previous diagnoses of bipolar I disorder and PTSD and noted that the "patient has been doing a lot better over the last few months." *Id.*

In the November 21, 2013 Mental Impairment Questionnaire submitted to the Appeals Council, however, Dr. Jennings indicated that Mr. Neal had a current GAF score of 50, indicating "serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.,* no friends, unable to keep a job)." DSM-IV at 34; AR 623. Dr. Jennings stated that Mr. Neal has "chronic and long term psychiatric impairment." AR 627. He also opined on Mr. Neal's work-related mental functioning, and his opinions in this regard conflict with the ALJ's RFC assessment in significant ways. For example, the ALJ concluded that Mr. Neal could sustain concentration, persistence, and pace to carry out moderately complex instructions over an 8-hour workday and 40-hour workweek. AR 31. But Dr. Jennings opined that Mr. Neal was seriously

limited in his ability to carry out even very short and simple instructions. AR 625. He further opined that Mr. Neal could not meet competitive standards with respect to maintaining attention for a two-hour block of time. *Id.* In addition, the ALJ concluded that Mr. Neal "should only have occasional and superficial interactions with the general public, but can otherwise interact appropriately with others." AR 31. Yet Dr. Jennings opined that Mr. Neal was unable to meet competitive standards in maintaining socially appropriate behavior. AR 626. He also opined that Mr. Neal was unable to meet competitive standards in getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. AR 625.

Under SSA's regulations, where a treating physician's opinion is "well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record," it is accorded "controlling weight." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R. § 404.1527(c)(2). Dr. Jennings has apparently treated Mr. Neal on a regular basis since 2008, so the opinions he expressed in the Mental Impairment Questionnaire are potentially entitled to controlling weight. As highlighted above, his opinions directly contradict the mental RFC assigned by the ALJ. Further, Dr. Jennings indicated in the questionnaire that Mr. Neal is subject to additional restrictions that the ALJ did not address, such as a need to be absent from work more than four days per month due to his conditions. AR 627. Because the questionnaire may be entitled to controlling weight and because it so directly and comprehensively conflicts with the ALJ's mental RFC determinations, I must conclude that those determinations are not supported by substantial evidence. While the government correctly notes that Dr. Jennings' November 5, 2013 progress note is in tension with the questionnaire, it is not for me to weigh competing evidence. *See Casias*, 933 F.2d at 800

(reviewing court may not substitute its judgment for that of the agency). I will therefore remand this case to SSA. On remand, the ALJ is directed to consider the November 2013 records from Dr. Jennings and their impact on Mr. Neal's RFC.

**B. Remand Is Necessary for the ALJ to Properly Address Evidence From the VA**

Mr. Neal argues that the ALJ erred in evaluating the opinions of Jill Watson, M.D., a VA doctor who evaluated him for a disabled parking placard in August 2012, and Melissa Polo-Henston, Psy.D., and Mary Langlois, M.D., VA doctors who conducted his "compensation and pension examination" for VA disability benefits in January 2013. He contends that these doctors are treating sources and that their opinions are entitled to controlling weight. SSA argues that these doctors are not treating sources because they do not have a sufficiently longstanding relationship with Mr. Neal, and that the ALJ gave adequate reasons for not giving their opinions controlling weight in any event.

Dr. Watson concluded that Mr. Neal "cannot walk 200 feet without rest and is limited overall in [his] ability to walk due to arthritis." AR 443. The ALJ gave this opinion "little weight" because the "opinion is not explained in any detail [and] there are no medically determinable impairments that would limit the claimant's ability to walk or stand." AR 35. Further, the ALJ noted that physical examinations of Mr. Neal by consultative examiners Dowin Boatright, M.D., and Christopher Davis, D.O., "revealed normal gait and station, and no difficulty walking (although toe walking was limited)." AR 35, 311-14, 602-08. While the ALJ did not say so, Dr. Watson is likely a treating source; VA medical records list her as Mr. Neal's primary care provider and show that she was involved in his treatment over several months. *See, e.g.,* AR 433, 444, 468-69, 484. The ALJ nevertheless gave adequate reasons for discounting her

11

opinion. *See Doyal*, 331 F.3d at 762 (noting that, while "the opinion of a treating physician concerning the nature and extent of a claimant's disability is entitled to controlling weight when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the claimant's] case record . . . [a]n ALJ may disregard a treating physician's opinion [where] it is not so supported") (internal quotations and citations omitted); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Dr. Polo-Henston evaluated Mr. Neal's PTSD and TBI. AR 389. The ALJ gave her opinions "moderate weight overall." AR 35. The ALJ explained that her conclusion that Mr. Neal "needed help with stressors when working in crowded situations" was "quite consistent with [his] treatment history and mental status exam findings." AR 35, 395. But the ALJ discounted her conclusion that Mr. Neal's PTSD "resulted in occupational and social impairment with reduced reliability and productivity" because it was not quantified and because "it is unclear whether the claimant would be so limited even if his limitations in social function were accommodated." *Id.* The ALJ also noted that the doctor's opinion was "rendered after a single examination and review of applicable records." *Id.* There is no indication that Dr. Polo-Henston had a treating relationship with Mr. Neal, so the ALJ did not err to the extent she classified her as a non-treating source. *See* 20 C.F.R. § 404.1527(c)(2) (noting that treating sources are able to provide "a detailed, longitudinal picture" of a claimant's impairments that is unobtainable from "individual examinations, such as consultative examinations"). Further, I conclude that the ALJ adequately explained why she gave little weight to Dr. Polo-Henston's opinions regarding Mr. Neal's reliability and productivity. *See* 20 C.F.R. § 404.1527(c)(3) (noting that "[t]he better an

explanation a source provides for an opinion, the more weight we will give that opinion.").

Dr. Langlois evaluated Mr. Neal's right knee and left shoulder. The ALJ gave "little weight" to her opinion that Mr. Neal "needed to be in a sedentary job that allowed him to change positions every 15-20 minutes, was limited to lifting 15 pounds, and was limited in reaching and overhead activities." AR 35, 374, 389. The ALJ explained that Dr. Langlois only saw Mr. Neal once and reviewed his records; that her opinions were not clearly explained; and that her opinions were inconsistent with "the exam findings of [Dr. Langlois'] exam," the "objective diagnostic evidence," and the "claimant's minimal treatment history." AR 35. Again, to the extent the ALJ classified Dr. Langlois as an examining source, she did not err given the lack of any indication that she had a treating relationship with Mr. Neal. In contrast with the ALJ's well-explained and well-documented discounting of Dr. Watson's and Dr. Polo-Henston's opinions, however, the ALJ's explanation here is lacking. Which examination findings? What objective diagnostic evidence? What treatment history? In what respect were Dr. Langlois' opinions not clearly explained? The ALJ does not say. Further, the ALJ failed to address Dr. Langlois' conclusion that, in addition to needing to change positions every 15 to 20 minutes, Mr. Neal needs "frequent breaks to get up and move around." AR 357. Accordingly, I cannot conclude that the ALJ properly evaluated her opinions.

I note that, contrary to the ALJ's position, Dr. Langlois' opinions are quite specific as to Mr. Neal's limitations, and her examination findings lend at least some support to those limitations. For example, she found slight limitation of range of motion of the right knee after repetitive-use testing and slight limitation of range of motion and a positive Hawkins Impingement Test as to the left shoulder. AR 363-66, 378-79, 381, 383. Further, Dr. Langlois

explained that the reason Mr. Neal needs to change positions every 15 to 20 minutes is because his "knee aches with [the] same position over time," undermining the ALJ's contention that this opinion was "not clearly explained." AR 35. While the government's counsel supplements the ALJ's reasoning by highlighting examination findings that are unfavorable to Mr. Neal, I cannot consider such post hoc rationales. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting "general rule against post hoc justification of administrative action"). On remand, the ALJ is directed to provide a better explanation of the weight accorded Dr. Langlois' opinions, particularly those regarding Mr. Neal's need to change positions and take breaks.

Mr. Neal also argues that the ALJ failed to properly assess a May 2, 2013 VA "Rating Decision" assigning 50% and 10% VA disability ratings to Mr. Neal's PTSD and TBI, respectively. AR 199-209. That decision states that it was based not only on the opinions from the January 2013 compensation and pension examination but also various other records in the VA's files. AR 199-208. While SSA is not bound by decisions of other government agencies, "another agency's determination of disability . . . is evidence that the ALJ must consider" and, to the extent the ALJ does not "find it persuasive," the ALJ must "explain why." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005); SSR 06-03P, 2006 WL 2329939, at *6-7 (Aug. 9, 2006). As one court has noted, "the purpose and evaluation methodology of both [the SSA and VA disability] programs are closely related" and "a disability rating by one of the two agencies is highly relevant to the disability determination of the other agency." *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 343 (4th Cir. 2012).

The ALJ provided two reasons for according "only moderate weight" to the VA's rating decision, and neither is adequate. AR 36. First, the ALJ stated that, "[w]hile a VA disability

rating has some relevance to the claimant's ability to perform work, the primary purpose of such ratings is not to establish the claimant's ability to work on a sustained basis." *Id.* This argument, however, fails to address the specific VA rating decision in this case. Second, the ALJ stated that "there is no direct correlation between a [VA] rating of 50% [for PTSD] and the claimant's ability to perform certain work activities or functions." *Id.* But the VA's rating decision specifies that Mr. Neal was assigned a 50% rating for PTSD because, *inter alia*, he experiences "[d]ifficulty in establishing and maintaining effective work and social relationships." AR 203. Further, this finding conflicts with the ALJ's finding that Mr. Neal "should be able to interact with co-workers and supervisors with little difficulty." AR 31. On remand, the ALJ is directed to address this discrepancy and all other relevant aspects of the VA's rating decision. To the extent the ALJ believes that differences between how the VA and SSA evaluate disability limit the relevance of the VA's rating decision, the ALJ should specifically identify such differences and explain why they are significant in this case.

**C. Remand Is Necessary for the ALJ to Properly Address Mr. Neal's Credibility**

Mr. Neal also contests the ALJ's evaluation of the credibility of his statements about his mental conditions. The ALJ concluded that, while Mr. Neal's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements about the intensity, persistence, and limiting effects of his symptoms were not entirely credible. AR 32. An "ALJ's credibility findings warrant particular deference" and should not be upset "[s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility." *White*, 287 F.3d at 909-10. A "formalistic factor-by-factor recitation of the evidence" is unnecessary. *Id.* (citation omitted).

Mr. Neal testified at the hearing that he experiences episodes of anger at least 3 times a week for 20 minutes apiece, and that they cause him to lose "half the day" from exhaustion after he "comes back down." AR 65-67. He has had to leave class "quite a few times" when he couldn't "pull it together," and once threw a chair out of frustration, leading to his withdrawal from the University of Colorado. AR 66-67, 69. In addition, he said that if he does not "get up and walk around" every 20 minutes, he will get "confused, lost, [and] agitated," which "starts leading into that depression and flash anger." AR 68. He is unable to shop because large crowds scare him and cause his anxiety and anger to flare up, sending him "from zero to combat speed." AR 57. Mr. Neal also testified that he can be "very, very slow" at getting things done, that he often forgets appointments, and that his wife is "constantly with me, you know, making sure I finish things step to step." AR 68.

The ALJ made no mention in her decision of Mr. Neal's testimony regarding his anger issues, and did not address how his thrice-weekly anger episodes and need to get up and walk around every 20 minutes would affect the jobs that are available to him. AR 32. Yet this testimony is corroborated by other evidence in the record. For example, the report of Dr. Jones, on which the ALJ relied, noted that Mr. Neal's PTSD symptoms included increased ease of anger. AR 33, 318. Jackie Grimmett, Psy.D., a psychologist who treated Mr. Neal, also alluded to Mr. Neal's anger problem in an April 2013 letter in which she noted that he is prone to "impulsivity and distractibility" and does "not always think things through before engaging in behaviors." AR 611-12. And Dr. Polo-Henston noted "[i]rritability or outbursts of anger" as one of Mr. Neal's PTSD symptoms. AR 410. While an ALJ need not discuss every aspect of a claimant's testimony, certainly testimony with such support in the record merits discussion.

16

Accordingly, I cannot conclude that the ALJ gave due consideration to Mr. Neal's testimony regarding his anger issues. Further, the error was not harmless. The vocational expert ("VE") testified at the hearing that an employer would accommodate "throwing things or walking out of situations" only once, and that "there aren't a lot of employment options for people you are afraid of." AR 74-75. The VE further testified that being off task between 10 and 20 percent of the work week would eliminate employment in the positions that the ALJ found Mr. Neal could perform at step five. AR 73. On remand, therefore, the ALJ is directed to fully address Mr. Neal's testimony regarding his anger issues and any impact those issues have on his RFC.

By contrast, the ALJ did note Mr. Neal's testimony that he forgets appointments and works at a very slow pace. AR 32. In her analysis on this issue, the ALJ acknowledged that Mr. Neal's mental status exam findings and testing results "suggest some impairment in the ability to sustain concentration" but stated that his "ability to spell words [in] reverse" and his ability to perform "serial 3 calculations" suggests that "he retains significant cognitive abilities, such that he is capable of understanding, remembering and carrying out instructions that can be learned and mastered within 6 months." AR 34. The ALJ also gave "great weight" to the opinion of state agency psychologist James Wanstrath, Ph.D., who reviewed the record in this case. AR 36, 91. Dr. Wanstrath concluded that "when work does not involve tasks of more than limited complexity and attention to detail, limitations of attendance and pace will not prevent the completion of a normal workday/workweek or significantly reduce pace." AR 91. Accordingly,

I am satisfied that the ALJ properly considered Mr. Neal's testimony on the issues of concentration and pace and had an adequate basis for discounting it.

## V.  Conclusion

For the foregoing reasons, it is **ORDERED** that SSA's decision is **REVERSED**.  This case is **REMANDED** to SSA for further proceedings consistent with this order.  Mr. Neal shall have his costs.

DATED: September   24  , 2015, at Denver, Colorado.

                          BY THE COURT:

                            s/Lewis T. Babcock
                          LEWIS T. BABCOCK, JUDGE